# Third District Court of Appeal

## State of Florida

Opinion filed March 15, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2450
Lower Tribunal No. F20-5155
_____

**The State of Florida,**
Appellant,

vs.

**Emilio Quevedo,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Ramiro C. Areces, Judge.

Ashley Moody, Attorney General, and Katryna Santa Cruz, Assistant Attorney General, for appellant.

Sherri A. Romano, P.A., and Sherri A. Romano; Arturo V. Hernandez, P.A., and Arturo V. Hernandez, for appellee.

Before EMAS, SCALES and HENDON, JJ.

EMAS, J.

The defendant, Emilio Quevedo ("Defendant"), was arrested and charged with two counts of attempted first-degree murder and one count of shooting or throwing a deadly missile, after an altercation with his neighbor, Jose Camacho, during which Defendant shot Camacho.

Defendant filed a motion to dismiss, and an affidavit in support, asserting he was immune from prosecution under section 776.032 and 776.012, Florida Statutes (2021) (Florida's Stand Your Ground law). Defendant declared the shooting was justified because he reasonably believed it was necessary to prevent imminent death or great bodily harm to himself. Specifically, Defendant averred his belief was reasonable because Camacho, while advancing toward Defendant, yelled at Defendant and threatened to "bust Mr. Quevedo's mouth and bust out his teeth." Camacho was twenty-five years old (nearly half the age of the forty-eight-year-old Defendant) and larger in stature than the five-foot, five-inch Defendant. Of significance, Defendant also averred that he suffers from a bleeding disorder called Von Willebrand disease, which presents a risk of severe blood loss when subjected to blunt force trauma. In his affidavit, Defendant asserted that he shot Camacho because he "was afraid that [Camacho] was going to kill [him] or inflict great bodily harm."

2

Importantly, the State stipulated that Defendant's motion and affidavit established a prima facie claim of self-defense immunity under Florida's Stand Your Ground law, and further stipulated: Camacho was the initial aggressor; Defendant was not engaged in criminal activity prior to shooting Camacho; and Defendant was in a place he had a right to be at the time of the shooting. As a result, the burden shifted to the State to overcome the prima facie claim of self-defense immunity by clear and convincing evidence that Defendant's use of force was not reasonably necessary to prevent imminent death or great bodily harm.

The Stand Your Ground hearing was held over six days, and included more than thirty exhibits as well as testimony from five witnesses for the defense and two witnesses for the State. The trial court had before it (in addition to Defendant's motion and affidavit), Defendant's medical records, which established that he did in fact suffer from Von Willebrand disease, that he was being treated for it and had been treated for it in the past. The court also viewed videos of the incident, which contained audio (mostly in Spanish), for which translations and transcripts were provided. The videos show the two exchanging words, and Camacho shouting at Defendant "te voy a matar a ti" (translated at the hearing as "I'm going to kill you.") At that point, Camacho waved his arms and advanced several steps toward

3

Defendant. Even after Defendant displayed the gun, Camacho continued to advance toward the Defendant. The two are within a few feet of each other when Defendant fires the gun.

Witnesses for the Defendant included a hematologist who testified that Defendant suffers from Von Willebrand's disease, as established by medical records and family history, and that this condition would lead to great bodily harm, major bleeding and possibly death if Defendant was struck in the mouth or nose.

In addition, Defendant's wife testified to her husband's history of Von Willebrand disease, his awareness of this condition, his prior hospitalization for the disease, and medication and precautions taken by him in his daily life as a result. She also testified that her husband legally owns the firearm involved in the incident, that he routinely carries it wherever he goes, and that he has a permit to carry the firearm in a concealed manner. Two witnesses testified for the State: the lead detective and Mr. Camacho.

At the conclusion of the hearing, the trial court entered a detailed, eight-page order finding, inter alia:

Camacho was the initial aggressor;

Defendant did not provoke or invite the attack and was in a place he had a right to be at the time of the shooting;

Camacho taunted the Defendant. Defendant insulted Camacho;

4

Camacho grew increasingly upset and threatened to break Defendant's mouth and/or teeth;

Camacho then aggressively advanced toward Defendant, at which time Defendant drew a firearm from under his shirt and shot Camacho;

The two men were "extremely close" to each other at the time Defendant discharged the firearm;

Defendant suffered from a blood disease that could turn a punch to the nose or mouth into a serious, potentially life-threatening injury requiring hospitalization;

Given the circumstances and Defendant's medical condition, Defendant reasonably believed the use of deadly force was necessary to prevent imminent death or great bodily harm.

With regard to Camacho's testimony at the hearing, the trial court stated it "did not find Camacho's testimony to be particularly credible. Mr. Camacho was evasive and often seemed incapable of answering simple questions.";

The trial court's order concluded:

Ultimately, there is no evidence, let alone clear and convincing evidence, upon which this court could find that a "reasonable person" in defendant's position would not have thought the use of deadly force was necessary to prevent imminent death or great bodily harm.

## **STANDARD OF REVIEW**

We apply a mixed standard of review to an order adjudicating a motion to dismiss based on Stand Your Ground immunity: the trial court's factual findings are presumed correct and can be reversed only if they are not

supported by competent substantial evidence. We review de novo the trial court's legal conclusions, including whether the State met its burden of establishing, by clear and convincing evidence, that Defendant's use of force did not meet the statutory standard for self-defense immunity. State v. Vino, 100 So. 3d 716 (Fla. 3d DCA 2012); Derossett v. State, 294 So. 3d 984 (Fla. 5th DCA 2020); Bouie v. State, 292 So. 3d 471 (Fla. 2d DCA 2020).

**ANALYSIS AND DISCUSSION**

Section 776.032, Florida Statutes (2020) provides in pertinent part:

(1) A person who uses or threatens to use force as permitted in s. 776.012, s. 776.013, or s. 776.031 is justified in such conduct and is immune from criminal prosecution. . . .

*** 

(4) In a criminal prosecution, once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution provided in subsection (1).

Section 776.012(2), Florida Statutes (2020) provides:

A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony. A person who uses or threatens to use deadly force in accordance with this subsection does not have a duty to retreat and has the right to stand his or her ground if the person using or threatening to use the deadly force is not

6

engaged in a criminal activity and is in a place where he or she has a right to be.

In the instant case, the State stipulated that Defendant's motion and affidavit established a prima facia claim of self-defense immunity. As a result, at the pretrial immunity hearing the State bore the burden of overcoming Defendant's self-defense immunity with clear and convincing evidence to establish Defendant did not reasonably believe his use of deadly force was necessary to prevent imminent death or great bodily harm to himself or to prevent the imminent commission of a forcible felony by Camacho. See § 776.012(2); Jefferson v. State, 264 So. 3d 1019, 1026-27 (Fla. 2d DCA 2018).

Following our review of the record, we conclude that the trial court's factual findings are supported by competent substantial evidence, and we hold that the trial court properly applied the relevant provisions of the Stand Your Ground law in concluding that the State failed to meet its burden to overcome Defendant's self-defense immunity. See § 776.032(4), Fla. Stat.; Bouie, 292 So. 3d at 474 (recognizing that "once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution") (quoting § 776.032(4), Fla. Stat.). See also Viera v.

7

State, 163 So. 3d 602, 604-05 (Fla. 3d DCA 2015) ("[T]he objective standard is to be applied by a trial court in evaluating the factual circumstances presented in a Stand Your Ground motion to dismiss. That standard requires the court to determine whether, based on circumstances as they appeared to the defendant when he or she acted, a reasonable and prudent person situated in the same circumstances and knowing what the defendant knew would have used the same force as did the defendant") (citing Mobley v. State, 132 So. 3d 1160 (Fla. 3d DCA 2014)); Toledo v. State, 452 So. 2d 661, 663 (Fla. 3d DCA 1984) (finding a person in the exercise of his right of self-defense may use only such force as a reasonable person, situated as he was and knowing what he knew, would have used under like circumstances); Price v. Gray's Guard Servs., Inc., 298 So. 2d 461, 464 (Fla. 1st DCA 1974) ("The conduct of a person acting in self defense is measured by an objective standard, but the standard must be applied to the facts and circumstances as they appeared at the time of the altercation to the one acting in self defense.")

Thus the objective standard of what is reasonable must be measured in light of the facts and circumstances as they appeared and were known to the individual defendant. In the instant case, Defendant established that he suffered from a bleeding disorder and that, if hit in the nose or mouth, he

8

would likely suffer great bodily harm, major bleeding, or even death.  Further, the Defendant's affidavit expressly averred that he shot Camacho because he was in fear that Camacho would kill him or cause him great bodily harm, given his condition and in light of Camacho's threat—made as he advanced toward Defendant—that he would "bust [Defendant's] mouth and bust out his teeth."

Finally, we have video footage presented at the Stand-Your-Ground hearing, which shows Camacho approaching Defendant in a threatening manner and, while advancing toward Defendant, yelling at Defendant and telling him "I'm going to kill you." And the testimony and other evidence presented at the hearing also demonstrated the difference in age, height and weight between the smaller, older Defendant and the younger, taller and heavier Camacho.

**CONCLUSION**

Because the trial court's findings are supported by competent substantial evidence, and because the trial court properly applied those findings to its legal determination that the State failed to meet its evidentiary burden to overcome Defendant's claim of self-defense immunity, we affirm.

Affirmed.

9